UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
MARK HOTTON,

                    Petitioner,
                                          <u>MEMORANDUM AND ORDER</u>
          -against-                       12-CR-0649(JS)
                                          17-CV-4440(JS)
UNITED STATES OF AMERICA,

                    Respondent.
----------------------------------------X
APPEARANCES
For Petitioner:      Mark Hotton, <u>pro se</u>
                     #81697-053
                     Joint Base MDL-FCI
                     P.O. Box 2000
                     Fort Dix, New Jersey 08640

For Respondent:      Burton T. Ryan, Jr., Esq.
                     Madeline M. O'Connor, Esq.
                     United States Attorney's Office
                     Eastern District of New York
                     610 Federal Plaza
                     Central Islip, New York 11722


SEYBERT, District Judge:

          Mark Hotton ("Petitioner") entered a guilty plea to
Conspiracy to Launder Money, in violation of 18 U.S.C. §§
1956(a)(1)(A)(i) and 1956(h), pursuant to a Plea Agreement with
the Government that included a waiver of his right to appeal or
collaterally attack his conviction or sentence. (<u>See</u> Plea
Agreement, D.E. 306-1 at ECF pp. 4-15; J., D.E. 231.) Following
the guilty plea, Petitioner was sentenced to a term of imprisonment
of one hundred thirty-five (135) months. (<u>See</u> J. at 2.) On

July 16, 2017, Petitioner, acting pro se, petitioned this Court to vacate, set aside, or correct his conviction and sentence pursuant to 28 U.S.C. § 2255 ("Section 2255").  (See Pet., D.E. 287.) Petitioner contends that he received ineffective assistance of counsel in relation to the entry of his guilty plea.  In addition to the aforementioned Petition, the following motions are pending before this Court: (1) Petitioner's motion to correct his sentence pursuant to Rule 36 of the Federal Rules of Criminal Procedure ("Rule 36") filed in October 2017 (Rule 36 Mot., D.E. 296); (2) Petitioner's motion to correct his sentence pursuant to Rule 36, originally filed in the Southern District of New York in July 2017 (S.D.N.Y. Rule 36 Mot., D.E. 313); (3) Petitioner's motion to amend his Section 2255 Petition (Mot. to Amend, D.E. 306); and (4) Petitioner's motion to expand the record and appoint counsel (Mot. To Expand & Appoint Counsel, D.E. 322).  For the following reasons, the aforementioned motions are DENIED in their entirety.

BACKGROUND

The Court assumes familiarity with the facts, which are referenced only as necessary to explain the Court's decision.

I.   Factual Background

Petitioner entered into a Plea Agreement in which he agreed to plead guilty to Count One of a Superseding Information, charging Conspiracy to Commit Money Laundering, which carried a maximum jail sentence of twenty years of imprisonment and no

minimum term of imprisonment. (Plea Agreement ¶ 1.) The Superseding Information stated, in pertinent part, that:

> On or about and between January 1, 1995 and October 15, 2012, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, [Petitioner], together with others, did knowingly and intentionally conspire to conduct one or more financial transactions in and affecting interstate commerce, which transactions in fact involved the proceeds of specified unlawful activity, to wit: mail fraud, [ ] wire fraud, [ ] securities fraud, [ ] and embezzlement from an employee benefits plan, [ ] knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity (a) with the intent to promote the carrying on of the specified unlawful activity . . . and (b) knowing that the transactions were designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of the specified unlawful activity.

(Superseding Information, D.E. 78, at 1-2.) The Plea Agreement contained an appellate waiver, in which Petitioner agreed not to appeal or collaterally attack his conviction pursuant to 28 U.S.C. § 2255 if he received a sentence of 135 months or less. (Plea Agreement ¶ 4.)

Prior to entering into this Plea Agreement, Petitioner met with the Government numerous times in an attempt to provide cooperation pursuant to a Proffer Agreement, but no Cooperation Agreement was offered to Petitioner. (Resp't Br., D.E. 292, at 2-3.) The Proffer Agreement stated in pertinent part:

> **THIS IS NOT A COOPERATION AGREEMENT**. Client
> agrees to provide the Office with information,
> and to respond to questions, so that the
> Office may evaluate Client's information and
> responses in making prosecutorial decisions.
> By receiving Client's proffer, the Office does
> not agree to confer immunity, make a motion on
> Client's behalf, or enter into a cooperation
> agreement, plea agreement or non-prosecution
> agreement. The Office makes no representation
> about the likelihood that any such agreement
> will be reached in connection with this
> proffer.

(See Proffer Agreement, D.E. 224-4, ¶ 1.) According to the

Government, "[o]n July 24, 2013, well before any entry of the

guilty plea [ ] [Petitioner], his counsel Marianne Rantala, and

his co-counsel Ira London . . . were both informed that no

cooperation agreement would be offered." (See Resp't Br. at 3.)

II. Guilty Plea

On July 30, 2013, in this Court, Petitioner entered a

guilty plea to Conspiracy to Commit Money Laundering in violation

of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(h). (J. at 1.) After

swearing Petitioner in, the Court ensured that Petitioner was

competent to enter the guilty plea and understood the plea

proceedings; the Court explained the constitutional rights

Petitioner was forfeiting by pleading guilty. (Plea Tr., D.E.

121, 7:6-10:21.)[1] The Court explained the range of sentences

---

[1] Marianne Rantala, Esq. was Petitioner's defense attorney for the
instant matter; Ira London, Esq. was Petitioner's defense
attorney for his matter in the Southern District of New York;

Petitioner faced, specifically noting that Petitioner could receive a maximum sentence of twenty years of imprisonment followed by three years of supervised release. (Plea Tr. 10:22-11:5.) The Court informed Petitioner that he would also receive a fine of $500,000 and "restitution in an amount that will be determined by the Court but will not be more than $5.7 million." (Plea Tr. 11:6-11:9.) The Plea Agreement was discussed, and the waiver provisions contained in the agreement were placed on the record:

> THE COURT: You also understand, do you not, that you can not appeal my sentence if I sentence you to a term of 135 months or less. Do you understand that?
>
> MR. HOTTON: Yes.

(Plea Tr. 14:7-14:11.) Further, the Court ensured that Petitioner understood that the Plea Agreement he was entering "super[s]edes any other agreement you had, any proffer agreements; in particular the January 2, 2000 proffer agreement." (Plea Tr. 21:1-21:6.)

Petitioner stated that he was entering the plea because he was in fact guilty and that no one was forcing him to plead guilty. (Plea Tr. 21:10-21:15.) In addition, Petitioner admitted to his criminal conduct and the following exchange occurred:

> THE COURT: All right, so tell me what it is that you did with respect to the superseding information, both as to the underlying conspiracy and as to the forfeiture?

---

both attorneys were present and participated in this guilty plea. (Plea Tr. 8:15-9:4.)

> MR. HOTTON: I created false invoices with others to guarantee payments that my company was not entitled to. The proceeds of this scheme was used to promote the ongoing business and the further generation of false invoices to continue the business. And the proceeds were also used to finance a cash payroll.
>
> THE COURT: And what kind of business was it?
>
> MR. HOTTON: Electrical installation and electrical supply company.
>
> THE COURT: And what period of time did this occur?
>
> MR. HOTTON: From like 2009 until 2011.

(Plea Tr. 21:16-22:4.) The Government then placed an offer of proof on the record:

> THE GOVERNMENT: There is additional evidence concerning frauds and money laundering relative to the earlier portion of the scheme from 1995 to 2009 that the government could prove.
>
> At that time Mr. Hotton was a broker dealer and he was involved in a series of fraudulent investment schemes involving companies such as Cross Country Capital, WQN, North Country Barbecue, a phone bond company, company bonds, phony GE promissory notes, Atlantic Senior Associates is another company, On Screen Media.
>
> He took money and made false statements concerning these investments or false document[s] concerning these. He defrauded a number of investors, approximately a dozen out of a number of millions of dollars. And then passed the money to promote his ongoing companies, and actually ended up purchasing through all of these, some of these schemes,

6

> the electrical companies through which he
> finally financed the false invoice scheme.
>
> And all of this was used, all this money was
> laundered for most of his illegal activities
> and to fund the payroll in which union benefit
> funds were not paid, and which none of the
> withholding taxes that were required to be
> paid to the IRS were ever submitted to the
> IRS.
>
> And in this way he committed the frauds,
> laundered money and he used operations for
> essentially 17 years.

(Plea Tr. 22:8-23:8.) Petitioner conceded that what the Government stated was true and that he committed his criminal activity knowingly. (Plea Tr. 23:23-24:18.) Petitioner admitted guilt and the Court, satisfied with the allocution, accepted his guilty plea. (Plea Tr. 25:3-25:13.)

III. <u>Sentencing Proceedings</u>

Prior to sentencing, the Probation Office prepared a Presentence Investigation Report ("PSR") and determined that Petitioner's Total Offense Level was 42 with a Criminal History Category of III and he faced sentences of 360 months to life imprisonment, though the statutory maximum sentence was 240 months of imprisonment. (<u>See</u> PSR, D.E. 122, ¶ 107.)

Petitioner returned to this Court for his sentencing hearing on June 25, 2015. (<u>See</u> Sentencing Tr., D.E. 259.) Prior to imposing sentence, the Court stated that it considered the PSR and its addendums, counsel's objections to the PSR, the guilty

plea, the Plea Agreement, and multiple letters. (Sentencing Tr. 4:8-18.)

During the sentencing proceedings defense counsel claimed that Petitioner was induced to plead guilty and stated that "[Petitioner] basically signed off on [the] plea agreement and entered into this plea under the false pretenses that he would be used [as a cooperator] because this was in the midst of the cooperation, and as a matter of fact after the plea hearing there were still meetings for cooperation." (Sentencing Tr. 10:12-17.) The Government responded that Petitioner had engaged in a lengthy series of proffers but that he was ultimately rejected as a cooperator, which the Government told Petitioner and defense counsel. (Sentencing Tr. 11:18-12:3.) As to Petitioner's allegations of inducement to plead guilty, prior to the plea the Government stated that "the government never made any false promise to [Petitioner]. He knew that he did not have a cooperation agreement. He indicated his willingness to attempt and continue to work with the agents to develop criminal cases. The agents were willing to work with him to see if that could happen, but unfortunately once [Petitioner] was released on bail, he went out and committed new and additional crimes, lying to pretrial services numerous times." (Sentencing Tr. 13:22-14:5.) The Government discussed Petitioner's actions while out on bail:

> There were a long series of events while out
> on bail, where even if he had been granted a
> cooperation agreement he would not have
> honored the minimum conditions which is
> required to commit no additional crimes. As
> a result of that, there was a lengthy hearing
> held before the Court concerning the
> defendant's conduct and the defendant was
> remanded. As a result of that, the probation
> department found him to have lost his
> acceptance of responsibility for this new
> criminal conduct and other consequences that
> increased his punishment before the Court.
> All of that goes to show that there was no
> fraud in the inducement at all by this
> defendant. In fact for a man who has spent
> his entire professional life as essentially a
> career white-collar criminal lying to people
> and making false promises about what he would
> do, we find it the most extreme irony that he
> now accuses the government of acting as he has
> acted his entire life.

(Sentencing Tr. 14:19-15:11.)

Defense counsel then stated that during Petitioner's guilty plea allocution Petitioner was never asked if he had reviewed the Superseding Information. (Sentencing Tr. 17:17-21.) As a result of this representation, the Court allowed for an adjournment for defense counsel and Petitioner to consider whether Petitioner wanted to withdraw his guilty plea. (Sentencing Tr. 36:7-24.)

Defense counsel indicated that only a brief adjournment was needed and upon return that day the Court asked: "Do you understand that you were given a full opportunity to withdraw your plea today based on any claims that you have that your plea was

not knowingly made because I didn't specifically ask you had you reviewed the plea agreement with your attorneys. Do you understand that?" (Sentencing Tr. 38:11-16.) Petitioner responded that he understood and chose not to withdraw his plea. (Sentencing Tr. 38:17-39:1.) The Court proceeded to hold a Fatico hearing and heard from witnesses presented by the defense and the government regarding the loss amount caused by Petitioner's criminal activities. (Sentencing Tr. 42:3-97:14.) Ultimately the Court determined that "as a result of this Fatico hearing that the government's summary is indeed accurate and I find the amount of $9,336,213 is the amount of intend[ed] loss which causes [Petitioner] to be in--that would add additional levels to have him at a bas[e] offense level of 36. In addition, the amount of restitution is $6,019,962." (Sentencing Tr. 102:25-103:7.)

Defense counsel argued that the Plea Agreement had a cap offense level of 33, that the correct base offense level should have reduced the level to 32, and a two-level reduction for acceptance of responsibility should be added, bringing the offense level to 29 with a sentence range of 87 to 108 months. (Sentencing Tr. 103:17-104:8.) As to acceptance of responsibility the Government responded that "there was no way at the time we entered this plea agreement that we could be aware [Petitioner] was going to commit new crimes subsequent to his release on bail and the probation department was entirely free to reject the acceptance of

responsibility because of that and find that he obstructed justice or no longer had accepted responsibility because of the new criminal conduct while released on bail." (Sentencing Tr. 105:15-22.) In response to defense counsel's statement that the Government had agreed not to challenge the acceptance of responsibility, the Government stated that "the court is free to provide him the acceptance of responsibility. We would have not objected if you do provide it, but it's up to the court's discretion." (Sentencing Tr. 105:25-106:14.) The Court determined that Petitioner would not be receiving credit for acceptance of responsibility, stating "[t]his is a classic case of someone not accepting responsibility, and not bothering to even coordinate their activities with a generous opportunity to be at liberty." (Sentencing Tr. 106:17-19.) The Court then engaged in an analysis of the Sentencing Guidelines, ultimately finding Petitioner's offense level was 43. (Sentencing Tr. 108:1-112:19.)

In considering sentence, the Court referenced Petitioner's guilty plea in the Southern District of New York and defense counsel pointed out that Petitioner had already completed his Southern District sentence before receiving the instant sentence. (Sentencing Tr. 104:22-105:12.)

The Court engaged in a discussion with the parties regarding their stance on the U.S.S.G. § 3553(a) factors as applied to Petitioner. (Sentencing Tr. 103:22-127:4.) Further, the Court

addressed Petitioner's criminal activities during the pendency of this case. (Sentencing Tr. 127:6-128:16.) Following arguments from counsel and a consideration of all factors under U.S.S.G. § 3553(a), in accordance with the Plea Agreement, the Court sentenced Petitioner to a sentence of 135 months of imprisonment followed by three years of supervised release and a restitution amount of $5.75 million. (Sentencing Tr. 130:7-20.)

Notwithstanding the appeal waiver, Petitioner sought relief from the Second Circuit Court of Appeals following his sentencing; Petitioner's appellate counsel filed an Anders brief which Petitioner opposed pro se, arguing that the guilty plea was not voluntarily executed. (See Resp't Br. at 2.) On March 22, 2016, the Second Circuit held the following: "Upon due consideration, it is hereby ORDERED that the Anders motion is GRANTED, and the Government's motion to dismiss is GRANTED . . . with respect to [Petitioner's] appeal of his conviction and term of imprisonment, and is construed as a motion for summary affirmance with respect to the non-custodial components of his sentence, and is GRANTED so construed." (See, 2d Cir. Order, D.E. 323-2, United States v. Hotton, No. 15-CR-2190 (2d Cir. Mar. 22, 2016).) Petitioner then moved for rehearing, which was denied by the Second Circuit on July 22, 2016. (See Pet. at 1; Resp't Br. at 5.)

IV.  The Section 2255 Motion

On July 16, 2017, Petitioner filed this Petition to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255, contending that he received ineffective assistance of counsel and was entitled to an evidentiary hearing to resolve this matter. (See Pet. at 9-13.)  Petitioner claims that counsel erred, in that:

> Defense counsel repeatedly assured [him] that despite what was said in the plea agreement and despite what was said in the courtroom that he would in fact get credit for cooperation and that there would be no relevant conduct.  In fact, the defense counsel on repeated occasions went to great lengths in telling [Petitioner] how this was going to be reduced and that was going to be credited.  In fact, apparently none of this was true.  [Petitioner] agreed to a plea with the [i]mpression that after credit for cooperation and all the other reductions he thought he was getting that he would either get time served or only have to serve a little more time.

(Pet. at 10.)  Petitioner provides lists of alleged quotes from his defense attorneys that induced him to enter his guilty plea, a plea that he insists he would not have accepted absent this ineffective assistance of counsel.  (Pet. at 3-8, 11.)  To summarize, Petitioner claims that his attorneys told him that: (1) if he provided credible information to the Government that he would get a Cooperation Agreement; (2) that the Government was satisfied with the progress of Petitioner's proffer sessions and he was going to get a sentence of time served or a short sentence; (3)

13

notwithstanding what was on the record or in the Plea Agreement, the Government promised that it would make a motion under Rule 35 to obtain a reduced sentence. (See Pet. at 3-8.)

The Government filed a response on August 16, 2017, arguing that Petitioner's claims are without merit, that his arguments were already presented to this Court prior to sentencing, and that his arguments are precluded by his valid guilty plea and appeal waiver. (See Resp't Br. at 2, 5-9.) The Government's argument is summarized as follows:

> In sum [Petitioner], knowing (1) he had not received a cooperation agreement, (2) that he had been caught and incarcerated after committing new crimes, and (3) that no promises existed as to what sentence he would receive, and (4) with the advice of two counsel, one of whom he does not claim was ineffective, chose to reject the opportunity to withdraw his plea. Given those facts, no factual or legal basis exists that justifies Hotton's claim he was actually 'prejudiced' by one of his two counsel's claimed representations making his plea non-voluntary.

(Resp't Br. at 9.)

On September 7, 2017, Petitioner submitted a reply providing further support for his claims of ineffective assistance of counsel, adding that "[t]he government has not submitted any affidavit that contradicts what occurred in meeting[s] outside the courtroom and off the record between [Petitioner] and defense counsel." (See Pet'r Reply Br., D.E. 293, ¶ 20.) In his reply,

Petitioner also adds that co-counsel Mr. London provided ineffective assistance, stating: "after being added to the team, Mr. London did not provide any advice during [ ] key meetings outside the courtroom and in many cases was not at the meeting . . . At one point after sentencing, Mr. London advised [him] to file a 2255 because Ms. Rantala 'made too many mistakes.'" (Pet'r Reply Br. at ¶¶ 18-19.)

The Government filed a sur-reply on November 17, 2017, including affidavits from Petitioner's former defense counsels Mr. London and Ms. Rantala. (See Resp't Sur-Reply, D.E. 301; see also London Aff., D.E. 301-1; Rantala Aff., D.E. 301-2.) In Ms. Rantala's affidavit, Petitioner's claims of ineffective assistance of counsel were denied in their entirety. Specifically, Ms. Rantala states that "[a]t no time did I ever tell [Petitioner] that a cooperation agreement was a certainty . . . [n]or did I tell [Petitioner] that a Rule 35 from the Government was a certainty." (Rantala Aff. at 2.) The affidavit explained that though a draft cooperation agreement was sent to her, it remained unsigned, acknowledging that after his guilty plea and release that "the [C]ourt found that [Petitioner] had intentionally violated numerous conditions of his release." (Rantala Aff. at 2.) Mr. London's affidavit addressed Petitioner's assertions of ineffective assistance, stating that: "[t]he fact is that Mr. Hotton and I had numerous and extensive conversations regarding

the progress of his attempted cooperation." (London Aff. at 1.)
In response to Petitioner's contention that Mr. London said Ms.
Rantala made mistakes justifying filing a Section 2255 petition,
the affidavit states: "What I actually said to Mr. Hotton was that
the remedy for issues with defense counsel's performance is a 2255
application. I never said Ms. Rantala 'made too many mistakes.'"
(London Aff. at 1.)

## V.   The Rule 36 Motion

On October 17, 2017, Petitioner filed a motion to correct
a mistake or omission in his sentence pursuant to Rule 36. (See
Rule 36 Mot.) This motion stated that Petitioner plead guilty to
wire fraud in the Southern District of New York on July 29, 2013
and was sentenced to 34 months of imprisonment. (Rule 36 Mot. at
1.) Petitioner claimed that the instant guilty plea and his
Southern District of New York plea are relevant conduct pursuant
to U.S.S.G. § 5G1.3(b), and as such the sentences should have been
run concurrently to each other. (Rule 36 Mot. at 1-2.) The
Government opposed this motion on November 22, 2017. (See Resp't
Opp. to Rule 36 Mot., D.E. 303.) First, the Government stated
that the guilty plea in the Southern District of New York was not
relevant conduct under the Sentencing Guidelines, as it involved
"a separate scheme, [ ] separate victims" and "[n]o common scheme
or plan existed . . . and there was no overlapping criminal
conduct." (Resp't Opp. to Rule 36 Mot. at 2.) Second, the

Government emphasized that Petitioner provided no factual basis to support his argument that both convictions were relevant conduct. (Resp't Opp. to Rule 36 Mot. at 2.)  Third, the Government stated that at the time of Petitioner's sentence in the instant case, he had already completed his Southern District sentence and "[t]he Court cannot sentence a defendant concurrently to a sentence that had already been completed, even if the Court found it related." (Resp't Opp. to Rule 36 Mot. at 3.)  Fourth, the Government alleged that as Petitioner failed to raise this argument on direct appeal that he is precluded from raising it in the Rule 36 motion.  (Resp't Opp. to Rule 36 Mot. at 3.)  Fifth, the Government claimed that a Rule 36 motion is intended for corrections of clerical errors, not a vehicle to run sentences concurrently.  (Resp't Opp. to Rule 36 Mot. at 3-4.)

On December 19, 2017, Petitioner submitted a reply in further support of his Rule 36 motion.  (See Pet'r Rule 36 Reply, D.E. 307.)

V.    The Southern District Rule 36 Motion

In July of 2017, Petitioner filed a motion in the Southern District of New York, to correct a mistake or omission in his sentence pursuant to Rule 36, arguing that according to U.S.S.G. § 5G1.2(b) he was entitled to the aforementioned sentences running concurrently.  (See S.D.N.Y. Rule 36 Mot.)  On November 2, 2017, the Government responded, arguing that the Southern District

of New York lacked jurisdiction to address this motion. (See D.E. 313-2.) On December 5, 2017, the Southern District of New York determined that this motion should be transferred to this Court for decision. The Southern District of New York first found that "Rule 36 is not the correct vehicle for such a motion because the error, if there had been one, would not be a clerical motion subject to correction under Rule 36. Rather, the motion would be a motion to amend the sentence under 28 U.S.C. § 2255 for an error in the imposition of the sentence." United States v. Hotton, No. 12-CR-0825, 2017 WL 6414055, at * 1 (S.D.N.Y. Dec. 5, 2017). The Court then determined that "any error, if there was an error, would not have been committed by this Court because at the time the sentence was imposed by this Court the defendant had not yet been sentenced in the Eastern District of New York." Id. The case was transferred and on January 7, 2019 and the Government filed an opposition addressing the merits of the motion. (See Resp't Opp. to S.D.N.Y. Rule 36 Mot., D.E. 316.) The Government reiterates that Petitioner is not entitled to relief under U.S.S.G. § 5G1.3(b), as he has not established that the sentences involved relevant conduct, maintaining that "[t]he remedy [Petitioner] seeks is not available to him. [Petitioner] had completed his term of imprisonment in the Southern District of New York at the time he was sentenced in the Eastern District of New York. There was no sentence of imprisonment to run concurrent with." (Resp't

Opp. to S.D.N.Y. Rule 36 Mot. at 1-2.)  On March 28, 2019,

Petitioner filed a reply restating his bases for Rule 36 relief.

(See Pet'r Mar. 28 Reply, D.E. 321.)[2]

V.    The Motion to Amend the Section 2255 Motion

On November 13, 2017, Petitioner filed a motion to amend

his Petition to vacate his conviction and sentence pursuant to 28

U.S.C. § 2255.  (See Mot. to Amend.)  Petitioner seeks to add the

following claims to his Section 2255 Petition:

(1)   he received ineffective assistance of counsel based on
      "defense counsel's misrepresentations of AUSA Ryan's
      promises"[3] (the "Defense Counsel's Misrepresentations
      claim") (Mot. to Amend at ECF p. 7);

(2)   the prosecutor "flagrantly violated the provisions of the
      Plea Agreement that prohibited the Government from seeking
      an upward departure or taking a position on the appropriate
      sentence within the applicable Sentence Guideline Range"
      (the "Plea Agreement Violation claim") (Mot. to Amend at
      ECF pp. 16-17);

(3)   the prosecutor violated the Proffer Agreement "by using
      statements provided concerning alleged regulatory
      misconduct, not criminality, exclusively and directly
      provided under protection of the proffer agreement to
      super[s]ede, by information the original indictment" (the
      "Proffer Agreement Violation claim") (Mot. to Amend at ECF
      p. 26);

---

[2] Petitioner's March 28, 2019 reply not only includes support for
his Rule 36 motions, but adds arguments supporting his new
claims in his motion to amend the Section 2255 motion, which the
Court discusses in this Order.  Petitioner's Letter Motion dated
March 28, 2019, (D.E. 320), requesting leave to file his reply
late is MOOT, as Petitioner filed prior to the April 4, 2019
deadline.

[3] As factual support for this claim, Petitioner copies the
factual background section from his original Section 2255
Petition.

(4)  the guilty plea is invalid due to an "inadequate colloquy"
     (the "Inadequate Guilty Plea claim") (Mot. to Amend at ECF
     pp. 29-30);

(5)  the Court erred in not holding an evidentiary hearing
     regarding the Government's denial of a cooperation
     agreement (the "Cooperation Agreement claim") (Mot. to
     Amend at ECF pp. 34-35);

(6)  the Court erred in not adopting defense counsel's stance
     during sentencing (the "Sentencing Error claim") (Mot. to
     Amend at ECF pp. 36-37);

(7)  the Sentencing Guidelines loss determination and
     restitution amount were erred (the "Loss and Restitution
     Amount claim") (Mot. to Amend at ECF p. 38);

(8)  the Court erred in considering letters from "unidentified
     non-victims" (the "Victim's Letters claim") (Mot. to Amend
     at ECF p. 39);

(9)  his sentence is flawed as it was not run concurrent to the
     sentence received in the Southern District of New York (the
     "Concurrent Sentences claim") (Mot. to Amend at ECF
     p. 39.);

(10) "the Super[s]eding Information materially broadens and
     substantially amends the original charges resulting in the
     statute of limitations barring the super[s]eding
     information" (the "Superseding Information claim") (Mot.
     to Amend at ECF pp. 40-41).

(See generally Mot. to Amend at ECF pp. 7-41.)

As discussed above, Petitioner filed a reply on March
28, 2019, that provided support for his stance on his Rule 36
motions, but also addressed his Motion to Amend.  Petitioner
clarifies that claims two through ten in his Motion to Amend are
all grounds for either ineffective assistance of trial counsel or

ineffective assistance of appellate counsel claims. (See Pet'r Mar. 28 Reply at 4-5.)

On March 28, 2019, Petitioner filed a motion to expand the record and to appoint counsel. (See Mot. to Expand & Appoint Counsel.)

On August 26, 2019, the Government opposed Petitioner's motion to amend his Section 2255 Petition, arguing that (1) his motion to amend his Section 2255 motion is untimely and would "radically expand" the original motion; and (2) Petitioner's appeal waiver and guilty plea foreclose these claims. (See Resp't Opp. to Motion to Amend, D.E. 323, at 3-7.)[4]

DISCUSSION

I. <u>Applicability of Waiver</u>

As a threshold matter, it is "well established that a knowing and voluntary waiver of the right to appeal is generally enforceable." <u>United States v. Hernandez</u>, 242 F.3d 110, 113 (2d Cir. 2001); <u>Garcia-Santos v. United States</u>, 273 F.3d 506, 509 (2d Cir. 2001) (determining that waivers of collateral attack under

---

[4] The Court notes that on September 18, 2019, Petitioner filed a motion for an extension of time to file a reply to Respondent's Opposition to Motion to Amend. As the issues presented in Petitioner's submissions have been briefed at length, the Court DENIES this request. Petitioner provides support for his added claims in his motion to amend the Section 2255 petition, as well as in his March 28 reply. The Court finds that it has sufficient information to adequately address all of Petitioner's claims for relief. (See Sept. 18 Mot. for Extension of Time, D.E. 324.)

§ 2255 are enforceable). Therefore, "'[w]hen the record clearly demonstrates that [a] defendant's waiver of [the] right to appeal a sentence within an agreed Guidelines range was knowing and voluntary,' the waiver will be enforced." Sanchez v. United States, No. 10-CV-3653, 2012 WL 3150581, at *1 (E.D.N.Y. Jul. 31, 2012) (quoting United States v. Monzon, 359 F.3d 110, 116 (2d Cir. 2004)). However, the Second Circuit has held that there are instances where a petitioner may appeal or collaterally attack a conviction notwithstanding the existence of an appeal waiver, including: "(1) the arbitrary practice of sentencing without proffered reasons which . . . could in some cases amount to an abdication of judicial responsibility subject to mandamus, . . . (2) the defendant's right to appeal on the grounds of ineffective assistance of counsel, . . .; and (3) the arguably unconstitutional consideration of naturalized status." United States v. Rosa, 123 F.3d 94, 98 (2d Cir. 1997) (internal quotation marks and citations omitted).

Here, Petitioner stipulated that he would not file an appeal or otherwise challenge his conviction or sentence in the event that the Court sentenced him to a term of imprisonment of 135 months or less. (Plea Tr. 14:7-19.) Petitioner then received a sentence of 135 months of incarceration, followed by 3 years of supervised release, a term within the scope of the appeal waiver. (J. at 1-2.)

Following an examination of the record, the Court finds that Petitioner executed the appeal waiver knowingly and voluntarily. On the record, the Court explained the contents of the waiver, and Petitioner confirmed that he understood the waiver. (Plea Tr. 14:7-15:5.) However, to the extent Petitioner is raising ineffective assistance of counsel claims, these will "survive[ ] the guilty plea or the appeal waiver [ ] where the claim concerns the advice [Petitioner] received from counsel." Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008) (internal quotation marks and citation omitted). Therefore, though the Court finds the waiver enforceable, the Court will address the substance of the claims.

II. Section 2255

   A.   Timeliness of Section 2255

A petition seeking relief pursuant to 28 U.S.C. § 2255 must be filed within one year from the date when the judgment of conviction becomes final. 28 U.S.C. § 2255(f)(1). The Second Circuit has made clear that when a petitioner files a second petition seeking Section 2255 relief before his first habeas petition has reached a final disposition, the second petition is treated as a motion to amend the initial petition. See Ching v. United States, 298 F.3d 174, 175 (2d Cir. 2002) ("We hold that a habeas petition submitted during the pendency of an initial § 2255

motion should be construed as a motion to amend the initial motion.").

As discussed above, Petitioner was sentenced on June 25, 2015, his direct appeal was denied on March 22, 2016, and his petition for reconsideration was denied on June 22, 2016. Petitioner did not seek to file a writ of certiorari, but the deadline to do so was ninety days after the denial of the petition for rehearing, on October 21, 2016. Thus, the one-year limitations period to file a petition under Section 2255 began running on October 21, 2016 and expired on October 21, 2017.

Though the Court finds that Petitioner's initial Section 2255 Petition filed on July 16, 2017 was timely filed, his motion to amend his Section 2255 Petition, adding numerous grounds for relief, dated November 13, 2017, was filed outside the window to file an amended petition and is untimely.

As the Court finds that the motion to amend the habeas petition is untimely, the Court's inquiry continues. The Supreme court has ruled that "[a]n amendment to a 28 U.S.C. § 2255 petition filed after the expiration of the statute of limitations is barred unless it 'relates back' to the original petition." Veal v. United States, No. 01-CV-8033, 2007 WL 3146925, at *4 (S.D.N.Y. Oct. 9, 2007). Rule 15 of the Federal Rules of Civil Procedure provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or

defense that arose out of the conduct, transaction, or occurrence set out--or attempted to be set out--in the original proceedings." FED. R. CIV. P. 15 (c)(1)(B). "An amended habeas petition . . . does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." Mayle v. Felix, 545 U.S. 644, 650, 125 S. Ct. 2562, 2566, 162 L. Ed. 2d 582 (2005). "The fact that [the] initial petition and the proposed amended claim relate to the same stage of the proceeding is insufficient to establish relation back." Delutro v. United States, No. 11-CV-2755, 2014 WL 4639198, at *5 (S.D.N.Y. Sept. 16, 2014) (citing Gibson v. Artus, 407 F. App'x 517, 519 (2d Cir. 2010).

Reviewing the motion to amend, several of Petitioner's added claims are duplicative to the arguments made in support of his original Section 2255 Petition. The principal claim in the original Section 2255 is that counsel provided ineffective assistance of counsel by making misrepresentations regarding his guilty plea, thus invalidating the plea. The Defense Counsel's Misrepresentations claim in the motion to amend is identical to Petitioner's original claim, thus the Court addresses it in this Order. Petitioner's Plea Agreement Violation claim, the Proffer Agreement claim, and the Inadequate Guilty Plea claim, arise out of the same conduct as the original claim. Therefore, the Court

finds that these claims relate back to the claims in the timely Section 2255 Petition and are both addressed and denied in the analysis sections of this Order.

As to Petitioner's Concurrent Sentences claim, this claim arose out of a separate occurrence as the original claim. However, this claim was presented in the earlier Rule 36 motions, accordingly, this claim is addressed in the Rule 36 section of this Order.

The Court finds that Petitioner's remaining claims (the Cooperation Agreement claim, the Sentencing Error claim, the Loss and Restitution claim, the Victim's Letters claim, and the Superseding Information claim) do not relate back to the original Petition as they do not arise out of the claim in the original Section 2255 Petition, attacking his alleged invalid guilty plea. Therefore, the Court need not address the merits of these claims as they are untimely attempts to improperly expand his Section 2255 Petition.[5]

B.  <u>Section 2255 Legal Standard</u>

---

[5] The Court notes that even if the Court were to reach the merits of these added claims, they do not provide a basis for Section 2255 relief.

The Court rejects Petitioner's Cooperation Agreement claim, in which he argues that he was entitled to a hearing to confirm that the Government's decision not to offer a Cooperation Agreement was made in bad faith.  No cooperation was guaranteed to Petitioner, and as such, this is not a case where the Government improperly withdrew an already finalized Cooperation

"The writ of habeas corpus stands as a safeguard against

imprisonment of those held in violation of the law."  <u>Harrington</u>

_____

Agreement.  The record reflects that Petitioner was informed
that his Plea Agreement superseded any prior agreements and
Petitioner still chose to proceed with his plea.  Petitioner has
not established that he had a right to a hearing and this claim
does not provide a basis for habeas relief.

Regarding Petitioner's Sentencing Error claim and Loss and
Restitution claim, both claims take issue with portions of this
Court's Sentencing Guidelines determinations, and these claims
are precluded by Petitioner's valid appeal waiver and guilty
plea.  Though Petitioner attempted to title these claims as
ineffective assistance of counsel claims, they are sentencing
error claims.  Generally, "sentencing error claims are not
cognizable on a § 2255 petition" unless they result in a
"complete miscarriage of justice."  <u>Concepcion v. United States</u>,
Nos. 97-CV-2961, 93-CR-0317, 1997 WL 759431, at *3 (S.D.N.Y.
Dec. 10, 1997) (internal quotation marks and citation omitted);
<u>see also</u> <u>Graziano v. United States</u>, 83 F.3d 587, 590 (2d Cir.
1996).  As Petitioner's sentence was within the scope of the
waiver that he agreed to in his Plea Agreement, the
circumstances of his case do not constitute a "complete
miscarriage of justice" allowing for relief.

Petitioner's Victim's Letters claim, arguing that his sentencing
was unfair due to the Court's consideration of letters from
unidentified victims, is raised in a conclusory fashion and
"[s]elf-serving conclusory allegations . . . are insufficient to
establish ineffective assistance of counsel."  <u>Blumenberg v.
United States</u>, No. 05-CV-9416, 2009 WL 3459185, at *3 (S.D.N.Y.
Oct. 27, 2009) (citing <u>United States v. Torres</u>, 129 F.3d 710,
715-17 (2d Cir. 1997)).

Finally, Petitioner's Superseding Information claim, arguing
that the Superseding Information improperly broadened the
recitation of the original charges, is barred by the valid
guilty plea as an improper pre-plea claim.  <u>See</u> <u>Tollett v.
Henderson</u>, 411 U.S. 258, 267, 93 S. Ct. 1602, 1608, 36 L. Ed. 2d
235 (1973) (finding that where a petitioner has validly plead
guilty, "he may not thereafter raise independent claims relating
to the deprivation of constitutional rights that occurred prior
to the entry of the guilty plea.")

v. Richter, 562 U.S. 86, 91, 131 S. Ct. 770, 780, 178 L. Ed. 2d 624 (2011).  To obtain relief under § 2255 a petitioner must show "that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack."  28 U.S.C. § 2255(a).  Therefore, a collateral attack on a conviction or sentence is available "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect which inherently results in a complete miscarriage of justice.'"  United States v. Bokun, 73 F.3d 8, 12 (2d Cir. 1995) (quoting Hill v. United States, 368 U.S. 424, 428, 82 S. Ct. 468, 471, 7 L. Ed. 2d 417 (1962)).  When determining whether to grant relief, "the scope of review on a § 2255 motion should be narrowly limited in order to preserve the finality of criminal sentences and to effect the efficient allocation of judicial resources." Graziano v. United States, 83 F.3d 587, 590 (2d Cir. 1996) (internal quotation marks and citations omitted).  Accordingly, habeas corpus proceedings are an "asymmetrical enterprise in which a prisoner seeks to overturn a presumptively valid judgment of conviction." Pinkney v. Keane, 920 F.2d 1090, 1094 (2d Cir. 1990). As such, a petitioner has the burden of proving his claims by a

preponderance of the evidence. <u>Skaftouros v. United States</u>, 667 F.3d 144, 158 (2d Cir. 2011).

Generally, "claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice." <u>Massaro v. United States</u>, 538 U.S. 500, 504, 123 S. Ct. 1690, 1693, 155 L. Ed. 2d 714 (2003). However, "a petitioner may bring an ineffective assistance of counsel claim [in a Section 2255 petition] whether or not the petitioner could have raised the claim on direct appeal." <u>Yick Man Mui v. United States</u>, 614 F.3d 50, 54 (2d Cir. 2010) (citing <u>Massaro</u>, 538 U.S. at 509, 123 S. Ct. at 1696 (2003)).

As Petitioner's submissions were filed <u>pro se</u>, the Court will liberally construe them "'to raise the strongest arguments that they suggest.'" <u>Kirkland v. Cablevision Sys</u>., 760 F.3d 223, 224 (2d Cir. 2014) (quoting <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994)). Nonetheless, this does not excuse Petitioner "'from comply[ing] with relevant rules of procedural and substantive law.'" <u>Traguth v. Zuck</u>, 710 F.2d 90, 95 (2d Cir. 1983) (quoting <u>Birl v. Estelle</u>, 660 F.2d 592, 593 (5th Cir. 1981)).

C. <u>Ineffective Assistance of Counsel Standard</u>

As stated in his original Section 2255 motion, Petitioner claims that he received ineffective assistance of counsel as:

29

> Defense counsel repeatedly assured
> [Petitioner] that despite what was said in the
> plea agreement and despite what was said in
> the courtroom that he would in fact get credit
> for cooperation and that there would be no
> relevant conduct. In fact, the defense
> counsel on repeated occasions went to great
> lengths in telling [Petitioner] how this was
> going to be reduced and that was going to be
> credited. In fact, apparently none of this
> was true. [Petitioner] agreed to a plea with
> the impression that after credit for
> cooperation and all the other reductions he
> thought he was getting that he would either
> get time served or only have to serve a little
> more time.

(Pet. at 10, ¶ 46.)

For Petitioner to prevail on an ineffective assistance of counsel claim, he must "(1) demonstrate that his counsel's performance 'fell below an objective standard of reasonableness' in light of 'prevailing professional norms,' and (2) 'affirmatively prove prejudice' arising from counsel's allegedly deficient representation." United States v. Cohen, 427 F.3d 164, 167 (2d Cir. 2005) (quoting Strickland v. Washington, 466 U.S. 668, 688, 693, 104 S. Ct. 2052, 2064, 2067, 80 L. Ed. 2d 674 (1984)). When considering counsel's alleged errors, the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065. If a petitioner is able to establish an error of constitutional magnitude, he must next establish that he was prejudiced by counsel's performance,

meaning that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

To succeed on an ineffective assistance of counsel claim in the context of guilty plea, "petitioner must show that the plea agreement was not knowing and voluntary, because the advice he received from counsel was not within acceptable standards." Parisi v. United States, 529 F.3d 134, 138 (2d Cir. 2008) (internal quotation marks and citations omitted). If a petitioner shows that he was subjected to objectively unreasonable representation, he must still show that he was prejudiced, in that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 370, 88 L. Ed. 2d 203 (1985). Crucially, "[a] defendant who pleads guilty unconditionally while represented by counsel may not assert independent claims relating to events occurring prior to the entry of the guilty plea." United States v. Coffin, 76 F.3d 494, 497 (2d Cir. 1996).

When considering whether an evidentiary hearing is necessary to resolve a Section 2255 petition, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a

prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). The Second Circuit has found that "[t]o warrant a hearing on an ineffective assistance of counsel claim, the defendant need establish only that he has a 'plausible' claim of ineffective assistance of counsel, not that 'he will necessarily succeed on that claim.'" Puglisi v. United States, 586 F.3d 209, 213 (2d Cir. 2009) (quoting Armienti v. United States, 234 F.3d 820, 823 (2d Cir. 2000)). In addition, "the district court may use methods under Section 2255 to expand the record without conducting a full-blown testimonial hearing." Chang v. United States, 250 F.3d 79, 86 (2d Cir. 2001). Accordingly, there are situations where this Court can exercise its "discretion to choose a middle road that avoid[s] the delay, the needless expenditure of judicial resources, the burden on trial counsel and the government, and perhaps the encouragement of other prisoners to make similar baseless claims that would have resulted from a full testimonial hearing" and may conclude that an evidentiary hearing "would add little or nothing to [ ] written submissions." Id.

Here, applying the above-referenced standard, no evidentiary hearing is warranted because Petitioner's submissions, the underlying record, and the now expanded record that includes sworn affidavits from both defense counsel, conclusively demonstrate that Petitioner is not entitled to relief under Section

2255. The defense counsels' affidavits are sufficiently detailed, and Petitioner has not justified that additional documents outside of this record would aid the Court in making its determination. Therefore, the Court will not grant an evidentiary hearing.

D. <u>Effect of Guilty Plea</u>

The Court finds that Petitioner entered his guilty plea in a knowing and voluntary manner, thus foreclosing pre-plea claims for relief, as well as ineffective assistance of counsel claims that do not relate to the validity of the plea itself.

"Generally a knowing and voluntary guilty plea precludes federal habeas corpus review of claims relating to constitutional rights at issue prior to the entry of the plea." <u>Whitehead v. Senkowski</u>, 943 F.2d 230, 233 (2d Cir. 1991). When considering whether a guilty plea is valid, the Court considers "'whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.'" <u>Hill</u>, 474 at 56, 106 S. Ct. at 369 (quoting <u>North Carolina v. Alford</u>, 400 U.S. 25, 31, 91 S. Ct. 160, 164, 27 L. Ed. 2d 162 (1970)). "A plea is considered 'intelligent' if the accused had the advice of counsel and understood the consequences of his plea, even if only in a fairly rudimentary way,' and it is considered 'voluntary if it is not the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally.'" <u>Manzullo v.</u>

People of N.Y., No. 07-CV-0744, 2010 WL 1292302, at *5 (E.D.N.Y. Mar. 29, 2010) (quoting Miller v. Angliker, 848 F.2d 1312, 1320 (2d Cir. 1988)). As Courts analyze plea allocutions, "[s]olemn declarations in open court carry a strong presumption of verity. The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge v. Allison, 431 U.S. 63, 74, 97 S. Ct. 1621, 1629, 52 L. Ed. 2d 136 (1977).

        Upon a review of the underlying proceedings, the Court finds that Petitioner knowingly and voluntarily entered a guilty plea, with an understanding of the rights he was forfeiting by pleading guilty, as well as a discussion of the factual basis for the plea. Throughout the plea proceeding, the Court confirmed that Petitioner understood the plea proceedings in their entirety. The terms of the Plea Agreement, including the waiver of his right to file a Section 2255 petition and the potential sentence he would receive, were placed on the record and Petitioner confirmed that he understood this. Further, the Court made clear that the agreement to plead guilty superseded all prior agreements, including his prior proffer agreement. Though Petitioner now claims that he entered into his guilty plea unknowingly, in that he was not adequately advised of the implications of his plea, upon a review of the record the Court does not find these

allegations credible.  The record of Petitioner's guilty plea includes explicit statements that the plea was not the result of coercion or other promises.  Thus, "[a] criminal defendant's self-inculpatory statements made under oath at his plea allocution . . . are generally treated as conclusive in the face of the defendant's later attempt to contradict them."  <u>Adames v. United States</u>, 171 F. 3d 728, 732 (2d Cir. 1999) (internal quotation marks and citations omitted).

Further, Petitioner's arguments regarding the involuntary nature of the guilty plea were previously raised at sentencing when defense counsel claimed that the Court had not confirmed on the record that Petitioner had reviewed the Plea Agreement prior to the guilty plea proceeding.  (Sentencing Tr. 17:17-21.)  This Court gave Petitioner the opportunity to vacate his guilty plea and to adjourn the matter rather than proceeding to sentencing, but Petitioner chose not to do so and was again reminded about his appellate waiver and the consequences of his guilty plea.  (Sentencing Tr. 34:3-39:1.)  Subsequently, when Petitioner sought relief from the Second Circuit, the Second Circuit upheld his conviction.[6]

---

[6] As the Court upholds the validity of the guilty plea following its review of the underlying record, the Court also rejects the Inadequate Guilty Plea claim raised in the motion to amend the Section 2255 Petition.  Further, the Court finds that Petitioner's Proffer Agreement Violation claim, which argued that the Government violated his Proffer Agreement at the time

As set forth above, Petitioner's plea allocution shows that his choice to plead guilty was both knowing and voluntary, and as such, Petitioner's attacks on the nature of his guilty plea do not provide a basis for habeas relief.

E.    Ineffective Assistance of Counsel Analysis

The crux of Petitioner's ineffective assistance of counsel claim is that defense counsel made misrepresentations inducing his guilty plea, in particular that he would be receiving credit for cooperation and that his sentence would be considerably shorter. (See Pet at 3-11.) Petitioner contends that this amounts to ineffective assistance of counsel. The Court rejects Petitioner's ineffective assistance of counsel claims as it does not find that Petitioner has credibly shown that counsel erred by providing deficient representation.

First, Petitioner's allegations regarding counsel's misrepresentations are contradicted by the sworn affidavits submitted by counsel. Defense counsel Ms. Rantala denies making the statements alleged in the Petition, stating:

---

of his guilty plea, is without merit. (See Mot. to Amend at ECF p. 26.) Though Petitioner argues that the factual basis for his plea and the facts raised at sentencing were taken improperly from his proffer sessions, this is contradicted by Petitioner's admission of his criminal activity on the record and acknowledging that the Government's recitation of the facts was accurate during the plea. The Court finds that Petitioner's claims regarding alleged violations of the Proffer Agreement are not supported by the record and do not provide a basis for habeas relief.

> Mr. Hotton is lying (or at best writing half-
> truths) when claiming that I made certain
> statements to him. He amazingly even alleges
> remembering exact quotes from memory made on
> exact dates. The quotes do not remotely
> compare to the way I speak. He seems to
> remember what he wants to remember and forget
> the rest of any advice that I [ ] gave to him.

(Rantala Aff. at 2.) Ms. Rantala emphasizes that in contrast to what Petitioner contends, she never told Petitioner that he was guaranteed a cooperation agreement or "that a Rule 35 from the Government was a certainty." (Rantala Aff. at 2.)

Further, the Court finds that the record contradicts Petitioner's claims that his guilty plea should be vacated as he was misled that he would receive a cooperation agreement, as the parameters of his guilty plea were presented to him both during the guilty plea proceedings and in his written agreements. According to the Government, Petitioner and his defense counsel were informed that he was not receiving a cooperation agreement prior to his choosing to proceed with a Plea Agreement. (See Resp't Br. at 3.) Ms. Rantala addressed the cooperation agreement, stating: "At no time did I ever tell [Petitioner] that a cooperation agreement was a certainty . . . The Government did in fact provide a draft cooperation agreement . . . (prior to the plea/bail hearing), but it was unsigned and unfortunately remained that way." (Rantala Aff. at 2.) Though Petitioner may have been hopeful that through meetings with the Government post-plea that

he would eventually receive credit through a Rule 35 motion, according to both the Government and defense counsel this was never promised to Petitioner. Defense counsel explained that: "[Petitioner] [ ] made [the Rule 35 motion] an impossibility with his repeated violations of the court-ordered release restrictions, one actually involving hacking into an employer's email and sending a fake email to Pretrial Services. After that, all that remained was to try to decrease the fraud loss calculations to the extent possible." (Rantala Aff. at 3.)

In addition, when entering his guilty plea, this Court ensured that Petitioner understood that no promises were being made to him to induce his guilty plea and that the Plea Agreement was superseding any existing Proffer Agreement with the Government. (Plea Tr. 21:1-15.) The Plea Agreement stated that other than the Proffer Agreement, "no promises, agreements or conditions have been entered into by the parties other than those set forth in this agreement and none will be entered into unless memorialized in writing and signed by all parties." (Plea Agreement ¶ 15.) When considering Petitioner's signed proffer agreement, it states that it was not a cooperation agreement:

> **THIS IS NOT A COOPERATION AGREEMENT.** Client
> agrees to provide the Office with information,
> and to respond to questions, so that the
> Office may evaluate Client's information and
> responses in making prosecutorial decisions.
> By receiving Client's proffer, the Office does
> not agree to confer immunity, make a motion on

> Client's behalf, or enter into a cooperation
> agreement, plea agreement or non-prosecution
> agreement. The Office makes no representation
> about the likelihood that any such agreement
> will be reached in connection with this
> proffer.

(See Proffer Agreement ¶ 1.)

All these agreements make clear that there was not a guarantee of credit for cooperation or a considerably reduced sentence. Rather, Petitioner freely entered into a guilty plea, during which he conceded that he knew the sentences he faced and that he would not challenge his conviction or sentence if sentenced to 135 months or below. (Plea Tr. 10:22-15:5.) As discussed prior, similar arguments regarding the unknowing nature of his plea were made during the sentencing proceeding and the Court gave Petitioner an opportunity to withdraw his plea. (Sentencing Tr. 17:17-21, 34:3-39:1.) Petitioner made the choice not to withdraw his plea. (Sentencing Tr. 38:11-39:1.) When considering the underlying record, it contradicts Petitioner's claims that based on misrepresentations from counsel or the Government his plea was invalid.[7] The Court repeatedly explained to Petitioner what he

---

[7] Petitioner adds his Plea Agreement Violation claim to his motion to amend, arguing that the Government "flagrantly violated the provisions of the Plea Agreement" by reneging on the promise of a Cooperation Agreement or a Rule 35 motion, by hiding Petitioner's cooperation efforts from the Court, and by seeking an enhanced sentence. (Mot. to Amend at ECF pp. 16-26.) Both the Government and Petitioner's defense counsel have denied that Petitioner was guaranteed a Cooperation Agreement or a Rule 35 motion. In addition, Petitioner's efforts to cooperate were

was agreeing to by entering this guilty plea and he affirmed his understanding of the consequences of his guilty plea. In sum, the Court finds that Petitioner is not entitled to habeas relief.

## III. Rule 36 Motions

Petitioner argues in both Rule 36 motions that his sentence should be amended because this sentence should have been run concurrent to his Southern District of New York sentence, as they involved relevant conduct pursuant to U.S.S.G. § 5G1.3. (See Rule 36 Mot. at 1-2; see also S.D.N.Y. Rule 36 Mot.) Generally, Rule 36 provides that: "[a]fter giving any notice it considers appropriate, the court may at any time correct a clerical error in a judgment, order, or other part of the record, or correct an error in the record arising from oversight or omission." See Urena v. United States, 99-CR-0073, 2010 WL 4823593, at *4 (S.D.N.Y. Nov. 29, 2010) (internal quotation marks and citations omitted). As Rule 36 is designed for the correction of clerical errors in sentences, this Court agrees with the Southern District that Rule 36 is not the correct procedural mechanism for the relief Petitioner seeks. (See Hotton, 2017 WL 6414055 at *1 ("Rule 36 is

---

made clear to the Court, but ultimately based on Petitioner's actions while out on bail no Cooperation Agreement was reached. Further, the Plea Agreement made clear the sentencing ranges Petitioner was facing and his ultimate sentence were not enhanced in violation of this agreement. (Plea Agreement ¶¶ 2, 15.) Thus, this claim has no merit.

not the correct vehicle for such a motion because the error, if there had been one would not be a clerical motion subject to correction under Rule 36. Rather, the motion would be a motion to amend the sentence under 28 U.S.C. § 2255 for an error in the imposition of the sentence.")).

Even if this Court were to treat this claim as an amended claim to his original 2255 Petition, the Court still finds it to be without merit.

Petitioner insists that the two convictions constituted relevant conduct pursuant to U.S.S.G. § 5G1.3(b). In response, the Government argues that "[i]n the Southern District of New York, [Petitioner] was charged and pled guilty, to a separate scheme, involving separate victims, primarily arising from defrauding a Broadway play producer. The charges in each district were independent and unrelated. No common scheme or plan existed, the victims were separate, and there was no overlapping criminal conduct." (Resp't Opp. to S.D.N.Y. Rule 36 Mot. at 2.) Moreover, the sentence in the Southern District was completed at the time the instant sentence was imposed and this was placed on the record during sentencing. See United States v. Lucas, 745 F.3d 626, 631 (2d Cir. 2014) ("[W]e hold [ ] that neither U.S.S.G. § 5G1.3 nor 18 U.S.C. § 3584 authorizes a district court to run a term of imprisonment concurrently with a discharged term of imprisonment on related charges.") Thus, there was no sentence for the Court

to run this sentence concurrent to and the Court does not find that Petitioner has demonstrated that his sentence should be amended.

IV. <u>Motion to Expand Record and Appoint Counsel</u>

Petitioner moves the Court to appoint counsel. However, "a habeas petitioner has no constitutional right to counsel in his habeas proceeding." <u>Harris v. United States</u>, 367 F.3d 74, 77 (2d Cir. 2004) (citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 752-53, 111 S. Ct. 2546, 2566, 115 L. Ed. 2d 640 (1991)). Ultimately, it is within this Court's discretion whether to appoint counsel during habeas proceedings. <u>See</u> <u>e.g.</u>, <u>U.S. ex rel. Cadogan v. LaVallee</u>, 502 F.2d 824, 826 (2d Cir. 1974). As the Court finds no merit to Petitioner's claims for relief, Petitioner's motion to appoint counsel is DENIED.

Additionally, Petitioner moves to expand the record and order prior counsel to submit additional affidavits. "A habeas petitioner bears a heavy burden in establishing the right to discovery because, unlike the usual civil litigant in federal court, he is not entitled to discovery as a matter of ordinary course." <u>Batista v. United States</u>, No. 14-CV-0895, 2016 WL 4575784, at *1 (E.D.N.Y. Aug. 31, 2016) (citing <u>Bracy v. Gramley</u>, 520 U.S. 899, 904, 117 S. Ct. 1793, 1797, 138 L. Ed. 2d 97 (1997)). Thus, a petitioner must show "good cause" to demonstrate he is entitled to discovery. <u>See</u> <u>Bracy</u>, 520 U.S. at 908-09, 117 S. Ct.

at 1799. "However, a court may choose to deny a request for discovery should a petitioner simply be engaging in a 'fishing expedition' without showing specific facts that would support a habeas corpus petition." Batista, 2016 WL 4575784 at *1 (citing Charles v. Artuz, 21 F. Supp. 2d 168, 169 (E.D.N.Y. 1998)). The Court finds that Petitioner is not entitled to expand the record further; both defense counsel have already submitted affidavits opposing Petitioner's version of his representation. The Court will not order counsel to submit additional affidavits based on Petitioner's conclusory assertion that they are "necessary and essential to the fair resolution" of his claims. (D.E. 322 at 2.) Therefore, Petitioner's request to expand the record is DENIED.

<u>CONCLUSION</u>

For the foregoing reasons, Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, (D.E. 287); motions to correct mistake or omission during sentencing pursuant to Rule 26 and 18 U.S.C. §§ 3584(a) and (b), (D.E's. 296, 313); motion for leave to file an amended application for a writ of habeas corpus pursuant to 28 U.S.C. § 2255, (D.E. 306); motion to expand the record and appoint counsel, (D.E. 322); and Petitioner's Sept. 18, 2019 letter motion for an extension of time, (D.E. 324), are DENIED. Additionally, Petitioner's letter motion for leave to file late, (D.E. 320), is rendered MOOT as stated herein.

Because there can be no debate among reasonable jurists that Petitioner was not entitled to habeas relief, the Court does not issue a Certificate of Appealability. 28 U.S.C. § 2253(c); see also Middleton v. Att'ys Gen., 396 F.3d 207, 209 (2d Cir. 2005). The Court also certifies that any appeal of this Order would not be taken in good faith, and thus his in forma pauperis status is denied for the purposes of any appeal. Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917, 921, 8 L. Ed. 2d 21 (1962).

The Clerk of the Court is directed to mail a copy of this Memorandum and Order to the pro se Petitioner and mark this matter CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:     October __21__, 2019
           Central Islip, New York